## STATE ex rel. KAHN et al. v. JOHNSON

No. 7131.   Decided November 4, 1948.   (199 P. 2d 556.)

See 18 C. J. S., Corporations, sec. 544; 13 Am. Jur. 527. Voting power of corporation stock as confined to issued and outstanding stock excluding unissued or treasury stock, note, 90 A. L. R. 315.

*McKay, Burton & White* and *Richard S. Johnson,* all of Salt Lake City, for appellants.

*Grover A. Giles,* Atty. Gen., and *Critchlow & Critchlow, E. C. Jensen,* and *Jensen & Richards,* all of Salt Lake City, for respondent.

PRATT, Justice.

This is the third of three proceedings, the foundation of which is the issuance of 200,000 shares of stock of the New Quincy Mining Company, a corporation. The first, *Floor* v. *Johnson et al.,* 114 Utah 313, 199 P. 2d 547, filed February 2, 1946, sought the cancellation of that issue and the declaration of the election of the Floor group of directors who lost by reason of the count of those 200,000 shares at the January 22, 1946, election of directors; the second, the Company and *Harold Bowman* v. *M. B. Johnson,* filed February 19, 1946, 114 Utah 342, 199 P. 2d 561, wherein Mr. Bowman as Secretary and Treasurer of the Floor group of directors sought, by writ of mandate, to obtain the books of the company from M. B. Johnson, the Secretary of the Johnson group of directors, who held office by reason of the count of the 200,000 shares at that election; and the present case, filed February 26, 1947, in Quo Warranto, wherein the right of the Johnson group of directors to hold office is in question. The previous two cases we decided in favor of the plaintiff, and so far as the same issues are involved here, we merely refer to them for consideration.

Briefly the foundation of the present case is this:

At the annual election meeting of the stockholders of the New Quincy Mining Company held January 22, 1946, the

defendants in the present action, hereafter denominated the Johnson group, were elected directors of that Company. Two slates of directors were nominated, the Johnson group, and the relators in this action, hereafter denominated the Floor group. The vote was 620,207 for the Johnson group and 483,376 for the Floor group. Perris Jensen on behalf of the Floor group objected to the voting of the 200,000 shares held by and voted by J. C. Johnson, trustee, on the ground that these shares were improperly issued. Without the votes represented by the 200,000 shares, the Johnson group—the incumbents, could not have been reelected. Proceeding on the theory that the 200,000 shares were improperly voted, the Floor group declared themselves elected and thereafter took and filed oaths of office and proceeded to organize as a board of directors. Thereafter, at the times indicated above these various actions were instituted. The trial court rendered a judgment for Floor in the cancellation suit and restrained the use of the 200,000 shares of stock for voting purposes. An appeal was taken and a supersedeas bond was filed January 14, 1947. The bond was objected to as not being in form sufficient to stay execution of the judgment. Thereafter another notice of appeal was served and on February 27, 1947, the defendants filed a new stay bond. On March 31, 1947, the restraining order against voting the stock was removed. During the interim, the general election meeting of the stockholders for 1947 was held January 28, 1947, at which time the 200,000 shares were not voted by reason of the existing restraining order. As a result, at this election the Floor group was elected.

After the restraining order was removed, certain stockholders of the New Quincy Mining Company comprising the Johnson group, made a call for a special stockholders meeting to be held May 13, 1947, for the purpose of removing the Floor group directors and the election of new directors. Before this call for a special meeting was made however, the present action was commenced as also was the mandamus proceeding—the second action mentioned above.

This matter of the May 13, 1947, special stockholders meeting was introduced by the defendants in this proceeding by supplemental answer. At this meeting the members of the Floor group were removed as directors and the members of the Johnson group were elected directors. The Floor group was not present at the meeting. The manner in which this meeting was called is of importance, and must therefore be outlined in some detail.

The procedure which was followed is outlined by Mr. R. S. Johnson (attorney for appellants—son of M. B. Johnson —nephew of J. C. Johnson) as follows:

"Myself and Mr. J. C. Johnson went with a copy of this exhibit [exhibit Number 2, call for special stockholders meeting] and presented one to Mr. M. B. Johnson as the secretary of the New Quincy Mining Company and asked him to give notice to the stockholders. Then we took another signed copy of this and we called upon Mr. Harold Bowman at his office in the Kearns building and we presented him with a copy and asked him to likewise issue a call and have it published."

Bowman indicated that he would have to consult his attorney as to this and did so. Thereafter, R. S. Johnson, having been informed by Bowman that he, Bowman, would not be available the following day, but that his attorney could act for him in giving a decision contacted Bowman's attorney, who informed R. S. Johnson that since M. B. Johnson still retained the company books it was impossible for Bowman to check them to determine that the petition or request for special meeting satisfied the requirements as to stockholders but that as soon as he got the books he would check them and then issue the call if warranted. R. S. Johnson stated that he elected to treat this as a refusal to call the meeting and elected to follow the alternative procedure as set out by statute—Sec. 18-2-26, U. C. A. 1943, which reads as follows:

"A director or other officer may be removed from office as provided in the articles of incorporation or by-laws, or in case there is no such provision, by a vote of a majority of the outstanding stock entitled

to vote, at a meeting held after previous notice of the time and place and of the intention to propose such removal. Special meetings of stockholders for this purpose may be called by the president or by a majority of the directors or by stockholders holding at least one-half of the shares of outstanding stock entitled to vote. Such calls must be in writing and addressed to the secretary, who must thereupon give notice to the stockholders entitled to vote of the time, place and object of the meeting and by whose order it is called. If the secretary refuses to give the notice, or if there is no secretary, the call may be addressed directly to such stockholders. In case of the removal of a director or other officer, the vacancy may be filled by election at the same meeting, or, if not so filled, by the board of directors, unless otherwise provided in the articles of incorporation or by-laws."

The conversation took place Saturday, April 26, 1947. Publication of notice of the special meeting however was in the Western Mineral Survey, commencing April 25, 1947 (Friday), and in the Deseret News, commencing April 28, 1947 (Monday). Testimony of M. B. Johnson reveals that he took care of both publications either April 25 (Friday) or April 26, (Saturday). Obviously it must have been not later than the 25th as to the weekly paper publication. It is apparent that the Johnson group did not wait for a refusal of the Floor group secretary to issue the call before going ahead with the publication of the call. At the special stockholders meeting 603,966 shares of stock were represented and voted, including some 87,700 shares voted by one R. S. Johnson, in addition to some 11,000 shares previously held and voted by him, and also the 200,000 shares standing in the name of J. C. Johnson, trustee.

The plaintiffs relied on four general propositions relative to the special meeting of May 13, 1947 as rendering it null and void. First, the meeting was improperly called as indicated above, and for this reason no action could be taken. Second, the 200,000 shares were not entitled to vote even though the restraining order had been removed, since they had been held by the lower court to be wrongfully issued and were outstanding only pending appeal. Third, the 87,-700 shares voted by Richard S. Johnson, in addition to the

stock previously voted by him, were improperly voted by reason of the fact that the certificates held by him were improperly issued. It appears that R. S. Johnson had applied to Tuttle and M. B. Johnson for the issuance of new certificates to replace certificates presented by him, standing in the names of others, and that these two purported to act as president and secretary in the issuance of the new certificates and making the transfer in the stock ledger, when in fact they had been ousted by the cancellation decree and also by the election of 1947; events which happened prior to the transfer on the stock ledger, and issuance of new certificates. The contention of the plaintiffs was that the 87,700 shares were not entitled to vote under Sec. 18-2-33. This section provides:

"Stock shall be deemed personal property. For the purpose of voting and of receiving dividends and of levying and collecting assessments and for other purposes wherein the corporation is otherwise interested the stockholder of record as shown by its books shall be treated and considered as the holder in fact, and the transferee shall have no rights or claims as against the corporation until transfer thereof is made upon the books of the corporation or a new certificate is issued to him."

Without the 200,000 shares being counted, the Johnson group would have fallen short of the majority needed to call and hold such a special meeting; with the 200,000 shares being counted, if the 87,700 shares are not counted, the Johnson group still falls short of that majority. (To give a clearer picture of the stockholders as they pertain to this controversy, the following is set out:

Counting the 200,000 shares and the 87,700 shares, there were 1,207,521 shares outstanding. The required ½ for calling such a meeting would be 603,761 shares. The meeting was called by 603,966 shares, a majority of 205 shares, which included the 200,000 shares and also the 87,700 shares. At the meeting there were 623,507 shares represented including the 200,000 and also the 87,700 shares.

It is clear from these figures the effect of the disqualification of either of these groups of stockholders.

Fourth, that the meeting was improper in view of the fact that the call was not in accordance with statutory procedure for calling such meeting as set forth in Sec. 18-2-41, U. C. A. 1943, the last part of which we quote:

"* * * Special meetings of the stockholders may be called * * * and notice thereof shall be given by personal service of the notice upon each such stockholder at least five days before the day fixed for the meeting, or by advertisement in some newspaper published in the state having general circulation in the county in which the principal place of business of the corporation is located. If the publication is made in a daily newspaper, the notice shall be published in each issue of the paper for a period of two weeks, and if in a weekly newspaper, for three successive issues next before the day of meeting."

It appears that personal notice to stockholders was not given, but publication was made in both a daily and a weekly newspaper. The contention of the plaintiffs is that the statute properly interpreted means that the last publication must also be five days before the meeting is to be held, and that this was not done. First publication in the Deseret News was April 28, 1947. Since the meeting was held May 13, 1947, and the Deseret News did not publish on Sunday, only 13 publications had been made. This publication is not relied upon by the defendants. The publication in the Western Mineral Survey appears to have been made three times—April 25 (which date we have noted was the date the call was received by Bowman, Secretary of the Floor group) was the first publication date, and last publication date was May 9, 1947. Thus no period of five days had expired between the last publication of the call and the meeting. The applicable portion of the statute is as follows:

"If the publication is made in a daily newspaper, the notice shall be published in each issue of the paper for a period of two weeks, and if in a weekly newspaper, for three successive issues next before the day of meeting."

The statute clearly does not contemplate a lapse of five days between the last date of publication in a weekly paper and the meeting, since it specifically says "three successive issues next before the day of meeting."

The trial court found for the plaintiffs, and concluded that the Floor group were properly elected and qualified as directors of the New Quincy Mining Company; that the May 13, 1947, meeting engineered by the Johnson group was null and void, and that the defendants were unlawfully holding office, and ousted them and confirmed the Floor group as directors. The defendants appealed.

Of the assignments of error, many relate to matters of pleading, several relate to matters arising at the trial—admitting or excluding evidence—and allowing a witness to read into the record a transcript of proceedings of a directors meeting which he did not prepare or take down personally; and finally, matters relating to the special stockholders meeting of May 13, 1947. In view of our previous decision concerning the controversies between these parties over the 200,000 shares of stock we believe the objections as to the May 13, 1947, meeting are the only ones we need discuss.

The defendants assign as error the finding of the lower court that the meeting of May 13, 1947, engineered by the Johnson group was null and void. The notice clearly was not given properly under the applicable statute, Sec. 18-2-26, U. C. A. 1943 (quoted above). R. S. Johnson did not make any real effort to ascertain whether or not the secretary whom he chose to treat as such for that meeting would act upon the notice before turning the notice over to M. B. Johnson for publication. As a matter of fact, publication in the Western Mineral Survey was dated April 25, 1947, which would indicate that the notice must have been given to them sometime prior to that date, or at the latest, early on that date, whereas it

appears that notice was not served on Bowman (Floor group secretary) until 2:35 P. M., and it does not appear that the latter refused to act. In fact, before final answer by Mr. Bowman's attorney, April 26, 1947, publication had started. However, the meeting must be declared null and void for other reasons as well. Having held in the case *Floor* v. *Johnson et al.*, supra, that the 200,000 shares of stock were improperly issued, they were not to be voted and were improperly counted in determining a majority to validate the call under Sec. 18-2-26 above. Since this disposes of the matter of the validity of the May 13, 1947, meeting, we need not discuss the matter of the 87,700 shares.

Judgment of the lower court is affirmed.

McDONOUGH, C. J., and WADE, J., concur.

WOLFE, Justice (concurring).

I concur for the reason that the merits of this case are determined by our decision in *Floor* v. *Johnson*, supra. Any other questions raised in the briefs are now moot.

LATIMER, J., concurs in the opinion of Mr. Justice WOLFE.