## Richmond

SCOTT COUNTY TOBACCO WAREHOUSES, INCORPORATED, JAMES EDWARD COZART, JOAN COZART AND JOHN B. HEMMINGS V. R. J. HARRIS AND J. T. HARRIS.

January 14, 1974.

Record No. 8242.

Present, All the Justices.

*Francis W. Flannagan* (*Waldo G. Miles; Woodward, Miles & Flannagan*, on brief), for appellants.

*William W. Eskridge* (*Penn, Stuart & Eskridge,* on brief), for appellees.

HARMAN, J., delivered the opinion of the court.

The controversy here arises from action taken at a special meeting of the stockholders of Scott County Tobacco Warehouses, Incorporated (the corporation), on May 19, 1972. On this appeal we must determine whether the action of a majority of the stockholders in removing the 16 incumbent directors of the corporation and electing a board of 3 directors in their stead is valid.

The corporation was incorporated, *sub nomine,* on March 28, 1949. The articles of incorporation named 15 directors to manage the affairs of the corporation for the first year, unless sooner changed by the stockholders. The number of directors was not fixed in the articles of incorporation.

By-laws were subsequently adopted, but they could not be located nor their complete contents discovered. There is evidence, and the trial court found, that the maximum number of directors was fixed in the by-laws at 16. The trial court also found there was no evidence as to the minimum number of directors permitted by the by-laws.

At the time of the special meeting, 16 persons, including appellees, R. J. Harris and J. T. Harris, and appellant James Edward Cozart, were serving as directors of the corporation, having been elected at the last annual meeting of the shareholders in January, 1972.

Fifteen shareholders representing 2,638 of the 2,794 outstanding shares of the corporation were present at the special meeting. 1,319 shares constituted a majority of the shares represented at the meeting, and 1,398 shares a majority of the outstanding shares. James Edward Cozart owned 1,419-½ shares.

At the meeting a motion was made and seconded to remove all directors. Put to a vote, the motion passed by a vote of 1,419-½ shares in favor of the motion to 1,215-½ shares against it with 3 shares not voting.

Subsequently, James E. Cozart, Joan H. Cozart and John B. Hemmings were nominated as directors of the corporation. They were elected by a roll call vote of 1,419-½ shares in favor of their election to 1,215-½ shares against it with 3 shares not voting.

Throughout the meeting R. J. Harris, J. T. Harris and their counsel participated in the discussions of the business transacted and voted

on the motions before the meeting. While objecting to the transaction of several items of business, at no time during the meeting did Messrs. Harris or their counsel object to the transaction of any business nor did they assert that the meeting was not lawfully called.

Four months after the meeting, the Harrises filed a petition for judicial review of election in the Circuit Court of Scott County under Code § 13.1-42. The petition alleged that the effect of the action taken by the shareholders at the meeting was to shorten the term of 15 of the 16 incumbent directors in contravention of Code § 13.1-36.

The circuit court, on November 6, 1972, entered the final decree from which this appeal was granted. In its written opinion and by its final decree the circuit court found that the action taken by the shareholders of the corporation at the special meeting in removing the directors and electing a new board was illegal since the notice of the meeting was inadequate. It also found that any action taken by the new board was void and reinstated the old board.

In determining whether the circuit court erred we must consider the following: (1) whether the meeting was valid; (2) whether removal of all the board members violates Code § 13.1-36; (3) whether removal of all the board members violates Code § 13.1-42; and (4) whether the election of only three new directors as a full board was legal.

*I*

■ It is argued that the meeting was invalid because the notice was improper in failing to expressly state the purpose of the meeting to be the removal of the directors.

We find it unnecessary to test the effectiveness of the language of the notice as notice was waived by the appellees when they participated in and voted at the meeting. Code § 13.1-27; *Handley* v. *Stutz*, 139 U.S. 417, 422-23 (1891); *Caldwell* v. *Kingsbery*, 451 S.W.2d 247 (Tex. Civ. App. 1970). The meeting was a valid meeting.

*II*

■ Appellees strenuously urge that the removal of all members serving on the old board has the effect of shortening the terms of all incumbent directors except James Edward Cozart. This, they argue, violates Code § 13.1-36.

The removal of the 16 directors necessarily shortened their terms. It does not follow, however, that such action violates § 13.1-36. Both

the language and the legislative purpose of this section compel the conclusion that this section is inapposite to the removal of directors by shareholders.

The pertinent language of § 13.1-36 is "No decrease in number [of directors] shall have the effect of shortening the term of any incumbent director." This language does not bar all actions which result in a foreshortened term. Rather, it bars only one particular action which will produce such a result, that is, a decrease in the number of directorships. The removal of the position holders is not a decrease in the number of positions. Thus, the shortening of the terms of the 16 incumbent directors does not stem from the cause prohibited by § 13.1-36.

That § 13.1-36 is aimed at actions other than shareholder removal of incumbent directors can also be understood by reading that section as an integral part of Title 13.1 of the Code.

Title 13.1 gives statutory sanction to developing corporate law by giving the board of directors, in managing the corporation, the power to amend or repeal by-laws in the absence of a reservation of this power to the shareholders in the articles of incorporation. Code § 13.1-24. In this way Title 13.1 comports with a general recognition of the need for convenience and flexibility in handling corporation business. *See Rogers* v. *Hill*, 289 U.S. 582, 588 (1933).

Inherent, however, in granting power to a board of directors to amend the instrument regulating the intracorporate balance of power is the danger of usurpation of shareholder control of those matters which may be most vital to their protection. *See generally* Speidel, *Exclusive Control of the Adoption and Amendment of By-Laws or Regulations by the Corporate Directors*, 25 U. Cin. L. Rev. 362 (1956).

The capacity of a board of directors to increase or decrease the number of directors through by-law amendment is an opportunity to effect such usurpation. *See, e.g., Templeman* v. *Grant*, 75 Colo. 519, 227 P. 555 (1924).

Recognition of the potential for abuse flowing from the board's increased capacity to deal with business exigencies through by-law amendment is reflected in § 13.1-36. This section prevents the directors, by amending the by-laws to decrease the number of directors, from curtailing the term of duly elected directors. In this way, a board's ability to alter its composition between annual meetings is restricted while the benefits of Code § 13.1-24 still obtain.

Thus, § 13.1-36 was enacted to restrict action by the board of directors and to insure ultimate corporate control in the shareholders. It was not designed to inhibit the power granted to shareholders in § 13.1-42 to remove directors at will.

### III

Appellees argue alternatively that the stockholders' action in removing the entire board at one time violates Code § 13.1-42 and, therefore, that the trial court's ruling is correct. This argument is made by comparing the language of § 36A of the Model Business Corporation Act (MBCA)[1] with § 13.1-42.[2] The appellees contend that the absence of the language ". . . the entire board may be removed . . ." from the Virginia statute is an expression of a conscious decision by the General Assembly to reject the MBCA scheme and to prohibit the simultaneous removal of every member of the board of directors.

The appeal of this argument dissipates upon an examination of the policy otherwise expressed in § 13.1-42 and upon a review of the source material underlying the adoption of Title 13.1.

At common law, shareholders, because of their right to elect directors, could remove directors, but only for cause. *Auer* v. *Dressel*, 306 N.Y. 427, 432, 118 N.E.2d 590, 593 (1954); *Abberger* v. *Kulp*, 156 Misc. 210, 212, 281 N.Y.S. 373, 376 (1935). A recognition developed that the requirement of cause in order to remove represented an impairment of stockholder control over the policy-making body of a corporation. *E.g.*, Ballantine, Corporations 434-435 (Rev. ed. 1946).

Our General Assembly took early cognizance of the harshness of the common law rule. Section 3789 of the Code of 1919 permitted shareholder removal of directors and other officers. This language was carried forward as the Code was revised and became § 13-200 of the Code of 1950. In formulating § 13.1-42 in 1956, the General As-

---

[1] The relevant language of § 36A of the MBCA (§ 39 in the 1969 revision) is:

"At a meeting called expressly for that purpose, directors may be removed in the manner provided in this section. The entire board may be removed, with or without cause, by a vote of the holders of a majority of the shares then entitled to vote at an election of directors."

[2] The relevant language of Code § 13.1-42 is:

"At a meeting called expressly for that purpose, any director may be removed, with or without cause, by a vote of stockholders holding a majority of the shares entitled to vote at an election of directors of the class or classes by which such directors were elected."

sembly has made express what theretofore was implied, namely, that shareholders may remove directors with or without cause. In so doing, they have expressed a continuing legislative purpose to protect and expand stockholder democracy.

We are disinclined to presume, as we necessarily must presume in order to accept appellees' argument, that the General Assembly would, in one sentence, increase shareholder control over the policy-making body, and in the next, reverse a policy of almost 40 years duration and restrict this control by preventing shareholders from removing the entire body. For, unless the stockholders are able to remove an antagonistic board in its entirety, the remaining directors would be able to replace those removed with others of their own persuasion. Code § 13.1-38.

House Document No. 5, *Report by the Code Commission of Virginia for Revision of the Laws Relating to Corporations* (1955), is the source of Title 13.1 of the Virginia Code. This report is patterned after the MBCA.[1] Each proposed section of the report which was intended to modify existing Virginia law or to depart from provisions of the MBCA is accompanied by a comment of the Code Commission pointing out the variance and the reasons why the variance is proposed. There is no such comment accompanying proposed § 13.1-42. We conclude, therefore, that the Code Commission and the General Assembly did not understand proposed § 13.1-42 to be a modification of § 36A of the MBCA. Rather, they conceived that in carrying forward from § 13-200 the language "any director" they were incorporating the Model Act's language permitting the removal of an entire board. In this regard it is significant that the Committee on Corporate Laws of the American Bar Association, the drafters of the MBCA, understood § 13.1-42 to permit the removal of an entire board. Model Bus. Corp. Act Ann. 1st, § 36A, ¶ 2.02 (1960).

Against this background, and in the absence of express statutory language restricting the right of stockholders to dictate who shall manage their corporation, we must refuse to read such an impediment to stockholder control into the Virginia statute. The shareholders' right to remove any director, with or without cause, necessarily includes the right to remove every director.

---

[1] Transmittal letter from Special Counsel to the Virginia Code Commission, February 22, 1955, in House Document No. 5, *Report by the Code Commission of Virginia for Revision of the Laws Relating to Corporations* 3-5 (1955).

## IV

■ Having removed the 16 directors, the stockholders elected three new directors as a full board. The legality of this change in number of directors is the final question we must address in reviewing the circuit court decree.

Upon the removal of the 16 directors the corporation was left with no operative board. This is an impossible concept. *Kaplan* v. *Block*, 183 Va. 327, 31 S.E.2d 893 (1944). To remedy this defect, the stockholders elected a new board. So long as they acted within the ambit of state law and the corporation's laws, as embodied in the articles of incorporation and the by-laws, they had an inherent right to do so. *Bruun* v. *Cook*, 280 Mich. 484, 273 NW 774 (1937); *accord, Barron* v. *Potter*, (1914) 1 Ch. 895, 7 BRC 374.

The minimum number of directors permitted by law for this corporation is 3. Code § 13.1-36. The corporation's articles of incorporation do not fix the number of directors. As noted earlier, the original by-laws cannot be located. However, the trial court found that the maximum number of directors was fixed in the by-laws as 16 and that there was no evidence that the by-laws fixed a minimum number. A fully constituted board of this corporation, therefore, was any duly elected board numbering between 3 and 16.

The old board was validly constituted not because it was composed of the number *required* by the by-laws or statute, but because it was composed of a number *permitted* by the by-laws and statute. The newly-elected board of 3 directors is validly constituted not by reason of any *de facto* by-law amendment, but because it too is composed of a number within the permissible 3 to 16 orbit. *Hinckley* v. *Swaner*, 13 Utah 2d 93, 368 P.2d 709, 3 ALR 3d 620 (1962).

For the reasons stated we find the decree of the circuit court to be in error. Therefore, the final decree of November 6, 1972, is reversed and a decree will be entered here embodying our holding that the special stockholders' meeting of May 19, 1972, validly removed the old board and legally elected the new board.

*Reversed and final decree.*