421 So.2d 1154 (1982)
Beth Williams STOUGH, et al., Plaintiff-Appellants,
v.
501 RANCH, INC., et al., Defendant-Appellees.
No. 15004.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1982.
*1155 Davis & Davis by Jackson B. Davis, Shreveport, for plaintiffs-appellants.
Nelson, Hammons & Johnson by John L. Hammons, Shreveport, for defendants-appellees, Helen W. Norris, Robert Williams, James C. Williams, III, 501 Ranch, Inc., & Mrs. J.C. Williams, Jr.
Pharis & Pharis by F. Jean Pharis, Alexandria, for defendant-appellee, Gloria W. Hearn.
Gordon O. Bartage, Shreveport, for defendants-appellees, John M. Williams & Mary W. Ziegler.
Before PRICE, MARVIN and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
This is an action to enjoin the transfer of stock, the payment of dividends on those shares upon which the transfer is opposed, and the payment by the corporation of legal fees and other expenses incurred by those seeking the transfer. Plaintiffs alternatively seek a judgment transferring the contested shares back to their original owner. The district judge rejected plaintiffs' demands and they appeal.[1] We affirm.
Plaintiffs, Beth W. Stough, Margaret W. Grooms, Carolyn W. Wheat and Gladys W. McKee, are sisters and stockholders in 501 Ranch, Inc., a closely held family corporation. Plaintiff, Norma Williams, is the succession representative of Marcus Clyde Williams who was a 501 stockholder and a brother of the other plaintiffs.[2]
The defendants are 501 Ranch, Inc., John Monroe Williams, Robert Williams, Gloria W. Hearn, Helen W. Norris, Mary W. Ziegler, James C. Williams, III, and Mrs. J.C. Williams. James C. Williams, III, is sued individually and in his capacity as liquidator of 501. Mrs. J.C. Williams is the widow of the incorporator and the mother of the individual defendants, the deceased, Marcus Clyde Williams, and plaintiffs Stough, Grooms, Wheat and McKee. Mrs. Williams is the only individual defendant who was not a record stockholder in 501.
This case revolves around sales by John Monroe Williams of his stock to defendants Hearn and Norris. We will begin by considering the validity of those transactions.
The facts were stipulated and are set out below.
*1156 The 501 Ranch, Inc., was incorporated by J.C. Williams on March 29, 1974. Williams' purpose in forming the corporation was to try to insure that his land would be held undivided as a unit after his death for as long as possible.
The articles of incorporation of 501 established certain stock transfer restrictions. Article XII provides that no shares may be transferred unless the shareholder desiring to dispose of his stock first offers it to the board of directors for the benefit of the remaining shareholders. Article VI provides that the articles of incorporation may be amended by a majority vote of the shareholders.
J.C. Williams donated 500 shares of stock per year to each of his eleven children in 1974, 1975 and 1976.
In October, 1974, J.C. Williams, 501 Ranch, Inc., and the eleven Williams children entered into a "Reciprocal Stock Sale and Purchase Agreement." This agreement granted a right of first refusal to the other parties to the agreement before any sale of stock could be made. John Monroe Williams, Helen Norris and Gloria Hearn were all parties to the agreement.
In January, 1975, John Monroe Williams sold 1,000 shares of his stock in the corporation to Helen Norris. In May, 1976, John Monroe Williams sold 500 shares to Gloria Hearn. The stock sales did not comply with the transfer restrictions in the articles or the shareholder's agreement.
On February 18, 1978, a stockholders meeting was held. Present were eight shareholders including appellants. Two other shareholders were represented by proxy. The shareholders present or represented by proxy held 15,000 of the 27,500 outstanding shares of the corporation. A motion that the stock sales to Norris and Hearn be recognized and accepted was "passed by all present" according to the minutes.
The directors of 501 met on October 14, 1978. The board was composed of the eleven Williams children. Because Mrs. J.C. Williams had expressed disapproval of the stockholders action of February 18, the board voted six to five to rescind approval of the transfer.
On May 1, 1980, a stockholder's meeting was held. This was the first stockholders meeting held since February 18, 1978. At this meeting by a vote of 26,000 shares to 0 the minutes of the February 18, 1978, meeting were approved. The shareholders also voted to reimburse Norris and Hearn for legal fees and other expenses incurred because of the controversy over the stock purchases.[3]
The plaintiffs brought this action on April 29, 1981, their demands were rejected and they took this appeal.
Appellants did not make any formal assignments of error and, thus, it is somewhat difficult to discern the substance of their complaints. Apparently they contend that the district judge based his decision on erroneous factual conclusions. These alleged erroneous conclusions are: (1) that the incorporator knew and approved of the sales and (2) that the vote to ratify was unanimous.
With respect to the first of the questioned conclusions we note paragraph 11 of the stipulated facts. There it is stipulated that John Monroe Williams offered to sell his stock to J.C. Williams. This strongly supports the conclusion that the incorporator knew of the sales. It does not appear from the record that J.C. Williams, the incorporator, ever questioned the sales to Norris and Hearn and that supports the conclusion that he approved of them. However, we note that whether or not the incorporator *1157 approved the sales is irrelevant to the issue of their validity.
Though the district judge was mistaken in his belief that the incorporator had attended the February 18, 1978, meeting, that mistake does not vitiate his other findings.[4]
Appellants stoutly contend that the ratification vote was not, as the district judge found, unanimous. This contention is based on the wording of the minutes that the motion was "passed by all present." Appellants argue that this actually means that the motion passed by a narrow margin on a divided vote.
Appellants' contention is nothing more than an exercise in strained semantics and is not supported by the record. A fair reading of the minutes of the February 18, 1978, meeting leads to the conclusion that the motion was adopted without dissent by a vote of at least 15,000 to 0.[5] At the next shareholders meeting on May 1, 1980, the minutes of the February, 1978, meeting were approved by a vote of 26,000 to 0.[6]
Stock transfer restrictions of the type imposed by the articles and shareholders agreement here are valid. Phillips v. Newland, 166 So.2d 357 (La.App. 3d Cir. 1964), writ refused, 246 La. 872, 167 So.2d 679 (1964); Avoyelles Trust & Sav. Bank v. Liliedahl, 348 So.2d 153 (La.App. 3d Cir. 1977); LSA-R.S. 12:24 C(4)[7]; LSA-R.S. 12:29 A[8]. The sales by John Monroe Williams did not comply with restrictions in either the articles or the agreement. Thus, the sales are invalid unless validated by subsequent corporate action.
The restrictions imposed by both the articles and the agreement are subject to modification or amendment by a vote of the shareholders. LSA-R.S. 12:31; LSA-R.S. 12:29. Section B of 12:31 provides "... an amendment altering the articles may be adopted by two-thirds of the voting power present, or by such larger or smaller vote (not less than a majority of the voting power present) as the articles may require..." Section A of 12:29 provides that shareholders agreements "... may be terminated or modified ... by the vote which would be required for adoption of an amendment to the articles." The provisions of Article VI of 501's articles require only a majority vote of the shareholders to amend the articles.
*1158 The February 18, 1978, vote of 15,000 to 0 to approve the invalid Norris and Hearn stock acquisitions represents a ratification by a majority of the outstanding shares of the corporation. We find that vote sufficient to amend and modify the restrictions in both the articles and the agreement and for these reasons the vote ratified and validated the stock sales by John Monroe Williams to Helen Norris and Gloria Hearn. The approval of the minutes of the February 18 stockholders meeting at the May 1, 1980, stockholders meeting by a vote of 26,000 to 0 and the passage of the resolution at this meeting by 27,000 to 0 directing the payment to Norris and Hearn of all expenses incurred to secure the transfer to them of the stock purchased from John Monroe Williams further supports the conclusion that this stock transaction was fully ratified by a majority of the stockholders at the February 18, 1978, meeting.
Appellants have suggested that the notice of the meeting of February 18, 1978, did not include ratification of the transfers as a subject of the meeting. However, this is of no avail because a shareholder who has participated in and voted at a meeting cannot complain of defects in the notice. Wisner v. Delhi Land & Imp. Co., 46 La.Ann. 1223, 15 So. 690 (1894).[9]
Appellants also complain of the district judge's failure to enjoin the corporation from paying the expenses incurred by Norris and Hearn.
The party seeking the injunction bears the burden of proving his right to injunctive relief. Olsen v. City of Baton Rouge, 247 So.2d 889 (La.App. 1st Cir.1971), writ denied, 259 La. 755, 252 So.2d 454 (1971).
The action sought to be enjoined is an alleged improper expenditure of money. The damage occasioned by this action would be ascertainable by pecuniary standards and compensable by money damages. Therefore, there would be no irreparable loss or injury, Musser v. Mercy Academy 389 So.2d 76 (La.App. 4th Cir.1980), which is a prerequisite to injunctive relief. State Board of Ed. v. National Collegiate Ath. Assn., 273 So.2d 912 (La.App. 3d Cir.1973); Wooten v. Null, 292 So.2d 883 (La.App. 2d Cir.1974).
Though we have concluded that the stock sales by John Monroe Williams to Norris and Hearn are valid we are not here required to determine what obligation the corporation has, if any, to reimburse Norris and Hearn for their expenses incurred to have the corporation recognize their stock acquisitions. The only issue presented is appellant's right to an injunction to prohibit the corporate officials and/or liquidator from paying these expenses and because appellants have failed to establish irreparable harm they are not entitled to the injunction.
Appellants' proper course of action with respect to any improper payments from corporate funds is an action for damages against the corporate officers and/or liquidator. LSA-R.S. 12:91; LSA-R.S. 12:145(G).
FOR THE FOREGOING REASONS THE JUDGMENT IS AFFIRMED AT APPELLANTS' COSTS.
NOTES
[1] We have previously overruled a motion to dismiss this appeal made by appellees.
[2] This appeal was taken by plaintiffs Stough, Wheat and Grooms, only.
[3] At a board of director's meeting held on April 1, 1979, by a vote of six to four the board of directors instructed the officers of 501 to take the necessary action to transfer the stock to Gloria Hearn, which she had purchased from John. The stock which Helen Norris had purchased from John had been transferred to her on the corporate books in February, 1975, and April, 1976. The stock transfer to Hearn directed by the board's resolution of April 11, 1979, was made on October 3, 1980, by J.C. Williams, III, in his capacity as liquidator of the corporation.
[4] The incorporator, J.C. Williams, had died a few months before the meeting.
[5] Appellees contend that the 11,000 shares of J.C. Williams were also voted in favor of the motion by the co-administrators of his estate, Robert and Clyde Williams. However, the minutes contain no indication that Robert and Clyde were acting in their representative capacities at the meeting.
[6] The only time the February, 1978, vote was questioned was at the October, 1978, directors meeting. The directors voted 6 to 5 to rescind the vote of February, 1978, and also declined to approve the "minutes of the prior meeting." The action of the board of directors in October, 1978, cannot affect the validity of the stockholder's ratification at the February meeting.
[7] LSA-R.S. 12:24 C(4): "C. The articles may also contain the following: ... (4) Any other provisions for the regulation of the business and the conduct of the affairs of the corporation not prohibited by this Chapter or other laws of this state, including, without limitation of the generality of the foregoing phrase, any provisions restricting the transfer of shares or for the optional or compulsory sale and purchase of shares among the shareholders and the corporation or any of them."
[8] LSA-R.S. 12:29 A: "A. Any lawful provision regulating the affairs of a corporation or the rights and liabilities of its shareholders, which is not required to be set forth in the articles, may be set forth in an agreement among all of the shareholders who would be entitled to vote on the provisions thereof if proposed as an amendment to the articles. Such an agreement shall be binding on all persons who are at the time such agreement is made, or who thereafter become, shareholders of the corporation, subject, in the case of persons not signatory thereto, to compliance with R.S. 12:57 (F). No other person dealing with the corporation shall be charged with constructive notice of such an agreement. Such an agreement may be terminated or modified by amendment at any time, in the manner (except that no amendment thereto need be filed or recorded except as provided in subsection B of this section) and by the vote which would be required for adoption of an amendment to the articles deleting or similarly modifying the provisions thereof if they had been set forth in the articles, or by such larger vote as may be specified in the agreement."
[9] There is a presumption that sufficient notice of a meeting of the shareholders has been given, 18 C.J.S. Corporations § 557, which has not been rebutted in this case.