KNOLL, Judge.
This appeal concerns the validity and ranking of two competing privileges on certain shares of stock owned by Century Mineral Corporation (hereafter Century), which are claimed by Great Southern Oil & Gas Co., Inc. (hereafter Great Southern), a *1236 seizing judgment creditor under a writ of fieri facias, and the Bank of Lafayette (hereafter Bank), as the purported conventional pledgee. The trial court ruled that Century’s pledge of those shares to the Bank outranked Great Southern’s seizure.
Great Southern appeals, contending that the trial court erred in: (1) holding that Great Southern did not have standing to assert the invalidity of the pledge which the Bank had claimed a superior privilege; (2) holding that, because of the absence of actual objection on the part of a direct signatory of the voting agreement which the seized corporate stock was subject to, Great Southern could not assert the superiority of its privilege as against the Bank’s imperfected pledge; and, (3) failing to hold Great Southern’s privilege was superior to the Bank’s pledge. We affirm.
FACTS
On September 15, 1978, Kedgeree Corp., N.V. Frank R. Bailey, Jr., Edgar Bright, Jr., Raymond Randolph, Yehia Omar, and William E. Simon, five of the shareholders of the Vermillion Irrigation Company (hereafter Vermillion), entered into a voting agreement to provide for the manner in which they would cast votes for the election of Vermillion’s directors.
During 1980 and 1981 Century acquired 107 shares of Vermillion stock, evidenced by 8 stock certificates. The 8 stock certificates may be divided into two groups. Group One consists of 5 stock certificates (Nos. 211, 228, 229, 230, and 232), totalling 58 shares, which bear the following legend on their face:
“Pursuant to an agreement dated as of September 15, 1978 among Kedgeree Corp. N.V., the Corporation, Frank R. Bailey, Jr., Edgar Bright, Jr., Yehia Omar, Raymond Randolph and William E. Simon, the shares evidenced by this certificate may not be sold, assigned, exchanged, transferred, pledged or otherwise disposed of or encumbered by the holder thereof unless the transferee thereof has agreed in writing to be bound by the provisions of said agreement to the same extent as if it were an original party thereto. A copy of said agreement is on file in the offices of the Corporation, as required by Subsection 12:29B of the Louisiana Business Corporation Law.”
Century acquired these 58 shares from a party or parties who were signatories to the voting agreement. Group Two consists of 3 stock certificates (Nos. 213, 231, and 234) totalling 49 shares. These 49 shares do not bear the aforementioned legend and none were acquired by Century from a signatory party or parties to the voting agreement.
On June 29, 1983, Century signed a written collateral pledge agreement which pledged Vermillion Stock Certificates 211, 213, 230, 231, 232, and 234 to the Bank as security for a loan/secured line of credit of $1,000,000. Eventually, Century, without a written pledge, also delivered Vermillion Stock Certificates 228 and 229 to the Bank. At no time did the Bank agree in writing to be bound by the voting agreement which affected Group One of the stock certificates.
On September 17, 1985, Great Southern obtained a judgment against Century for $1,000,000 plus interest, attorney’s fees and costs. On January 21, 1986, after Great Southern’s judgment became exec-utory, it requested a writ of fieri facias directing the Lafayette Parish Sheriff to seize Century’s 8 stock certificates which were in the Bank’s possession. On February 18, 1986, the Bank intervened in Great Southern’s action against Century, asserting its right as pledgee of the 8 stock certificates, and asking that its privilege as pledgee be recognized as superior to Great Southern’s seizure.
STANDING
Great Southern first contends that the trial court erred in ruling that Great Southern lacked standing to contest the validity of the Bank’s security interest in the stock certificates.
LSA-C.C.P. Art. 2292 provides:
“The seizing creditor, by the mere act of seizure, acquires a privilege on the prop *1237 erty seized, which entitles him to a preference over ordinary creditors.
When several seizures of the same property are made by ordinary creditors, the seizing creditors acquire a privilege and are entitled to a preference among themselves according to the order of their seizures.”
Privilege is a right, which the nature of a debt gives to a creditor, and which entitles him to be preferred before other creditors, even those who have mortgages. LSA-C. C. Art. 3186. The preference among privileged creditors is settled by the different nature of their privileges. LSA-C.C. Art. 3187.
Though no codal authority specifically addresses the issue of standing raised herein, we conclude that as between competing privilege holders, it is inherent in the foregoing codal articles that Great Southern has standing to urge the invalidity of the Bank’s competing pledge. Accordingly, we find that the trial court erred insofar as it held Great Southern lacked standing.
STOCK PLEDGE
Great Southern contends that Century’s stock pledge to the Bank was ineffective because of the legend on the stock (the Group One stock) which stated that it could not be pledged unless the pledgee agreed in writing to be bound by the voting agreement. As to the stock which had no legend (the Group Two stock), Great Southern contends that Century’s pledge was likewise ineffective because the Bank had actual knowledge of the voting agreement.
We shall first address the pledge of the non-legended stock, the Group Two stock.
LSA-R.S. 12:57(F) provides:
“(1) No by-law or other restriction on the transfer of shares, (2) no provision for compulsory offer of shares of its own stock for purchase by, or sale to, the corporation, (3) no agreement among shareholders binding on others than the parties signatory thereto, and (4) no lien or privilege in favor of a corporation on shares of its own stock, shall be recognized or enforced, unless such restriction, provision or agreement, or the right of the corporation to such lien or privilege, is set forth or summarized, or a reference thereto and information as to where the same may be inspected is contained, in the certificates representing the corporation’s shares.”
The record clearly reflects that the voting agreement did not affect all of the Vermillion stock. Moreover, at trial the litigants stipulated that the Group Two stock certificates in Vermillion were not derived from nor originally held by an original signatory party or parties to the Voting Agreement. It is axiomatic that the signatories to the voting agreement could only burden the shares they either owned or later acquired; they were powerless to burden those shares over which they did not have ownership rights. See LSA-C.C. Art. 477.
Great Southern’s reliance upon LSA-R.S. 10:8-204 and Thibodeaux v. Pioneer Land Development & Realty Corporation, 420 So.2d 1162 (La.App. 5th Cir.1982), writ granted only to award legal interest from judicial demand, 423 So.2d 1178 (La.1982) which addressed the interplay of LSA-R.S. 10:8-204 and LSA-R.S. 12:57(F), is misplaced. In order for that statute and its interpretative jurisprudence to apply, a restriction on the transfer of the certificate must have been imposed by the issuer. As detailed hereinabove, the restriction on the transfer of the Group Two stock certificates was not imposed by the issuer (Vermillion), but by the signatory to the voting agreement. Further, the issuer of the Group Two shares was not signatory to the voting agreement, and did not later agree to be bound by such. Accordingly, we find that the Bank, as pledgee of the Group Two shares, is a privileged creditor with a superior rank to Great Southern. See LSA-C.C. Arts. 3186, 3187. Therefore, the trial court did not err in its ruling regarding these non-legended certificates.
We now address the legended stock certificates, the Group One stock.
LSA-C.C. Art. 3142 provides:
“A debtor may give in pledge whatever belongs to him.
*1238 But with regard to those things, in which he has an ownership which may be divested or which is subjected to incum-brance, he can not confer on the creditor, by the pledge, any further right than he had himself.”
In the present case, the stock’s restrictive language, employing the permissive “may”, states, "... [TJhis certificate may not be ... pledged ... unless the transferee thereof has agreed in writing to be bound by the provisions of said agree-ment_” The trial court viewed this legend as embodying an incumbrance, i.e., an agreement to be bound by the voting agreement, rather than a prohibition of pledge. We agree.
Prior jurisprudence shows that courts have not hesitated to enforce stock restrictions whenever necessary to provide the intended results of those restrictions. See Stough v. 501 Ranch, Inc., 421 So.2d 1154 (La.App. 2nd Cir.1982), where stock restrictions which prohibited the sale of stock were enforced to insure that corporate land would be held undivided for as long as possible; and, Avoyelles Trust & Sav. Bank v. Liliedahl, 348 So.2d 153 (La. App. 3rd Cir.1977), writ denied, 350 So.2d 1228 (La.1977), where the public sale of stock was prohibited so that the corporation would remain a closed unit. Nonetheless, restrictions on the transfer of corporate stock are strictly construed since they unduly limit the free flow of commerce. Avoyelles Trust & Sav. Bank, supra.
After carefully reviewing the record, it is clear that the purpose of the voting agreement and the stocks’ restrictive language, was to obligate all the affected shares with the duty to vote for a candidate to serve on the board of directors of Vermillion who was nominated by Kedgeree. Accordingly, in contrast to Stough and Avoyelles Trust & Sav. Bank, the trial court in the present case was able to uphold the pledge and give effect to the stock restriction since there was no pledge prohibition. The Bank, by accepting the pledge of the stock burdened with the voting agreement, only had the rights that Century possessed. LSA-C.C. Art. 3142. Therefore, we find, as did the trial court, that the legended stock restrictions bound the Bank to the voting agreement, but that Century’s pledge to the Bank was nonetheless valid, and since the pledge was perfected prior to Great Southern’s seizure, the Bank’s pledge was entitled to a higher ranking.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Great Southern.
AFFIRMED.