Wesley BADGER; Grant LeFevre; Albert LeFevre; Ray M. Greenwood; Thomas LeFevre; and Clay C. Paxton, Plaintiffs and Appellants,

v.

Myron MADSEN; Glade Winget; Brent Lundgreen; and Brooklyn Canal Company, Defendants and Appellees.

No. 940254–CA.

Court of Appeals of Utah.

May 11, 1995.

Rehearing Denied June 21, 1995.

Paul M. Durham (argued), J. Mark Gibb, Durham, Evans & Jones, P.C., Salt Lake City, for appellants.

Ken Chamberlain (argued), Olsen, McIff & Chamberlain, Richfield, for appellees.

Before DAVIS, GARFF [1], and WILKINS, JJ.

DAVIS, Associate Presiding Judge:

Plaintiffs Wesley Badger, Grant LeFevre, Albert LeFevre, Ray M. Greenwood, Thomas LeFevre, and Clay C. Paxton (collectively referred to as "plaintiffs") appeal the trial court's grant of summary judgment in favor of defendants Myron Madsen, Glade Winget, Brent Lundgreen, and Brooklyn Canal Company (Brooklyn). We affirm.

## I. FACTS

When reviewing a trial court's grant of summary judgment, the facts and all reasonable inferences which may be drawn therefrom are viewed in the light most favorable to the nonmoving party. *K & T, Inc. v. Koroulis*, 888 P.2d 623, 624 (Utah 1994). The facts below are stated accordingly.

Brooklyn is a non-profit corporation formed for the purpose of distributing water flowing from the Sevier River to its shareholders. At all relevant times, Madsen was president of Brooklyn, Lundgreen was vice-president, and Winget was secretary-treasurer. Plaintiffs are shareholders of Brooklyn.

On January 22, 1992, a Notice of Special Stockholders Meeting (special meeting) of the Brooklyn Canal Company was given to all Brooklyn shareholders for the purpose of taking "a final vote on the proposed pressurized irrigation system [the project] and to authorize the debt for the system." The special meeting was scheduled for February 18, 1992 at 7:00 p.m.

Madsen read a resolution at the special meeting which provided that Madsen and Winget were

authorized to enter into a contract with the State of Utah, acting through the Board of Water Resources, for the construction of a water conservation project consisting of an underground pipe system for sprinkle irrigation, and enlargement of the Monroe South Bend Canal in conjunction with the Monroe Irrigation Canal Company.

The resolution was not attached to the notice.

For the purposes of the project, Brooklyn was to assign [2] to the Board of Water Resources all of its properties, easements, and water rights appurtenant to the project. After a shareholder vote, the resolution passed with 72.33% of the total shares [3] voting for the resolution.[4]

To confirm the validity of the shareholders' vote, Badger attempted to inspect Brooklyn's stockbook, the meeting minutes, and other company records. According to Badger, both Madsen and Winget denied him access. Because of this refusal, plaintiffs filed a lawsuit on September 9, 1992 requesting an order permitting them access to Brooklyn's books and a money judgment for damages incurred, attorney fees, and court costs. On September 23, 1992, defendants filed their answer to plaintiffs' complaint and denied that they had refused plaintiffs access to Brooklyn's records, thereby giving plaintiffs access to the books.

---

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Rule 3–108(4), Utah Code of Judicial Administration.

2. At oral argument, defendants stated that pursuant to state requirements, Brooklyn would actually have to sell its assets to the State and buy them back at the appropriate time.

3. Ninety-three percent of the outstanding shares of stock were represented at the special meeting in person or by proxy. Although the proxy form by its terms did not provide the proxy holders with specific instructions, they were nonetheless valid. *See Nettles Island, Inc. v. Ely*, 436 So.2d 278, 278 (Fla.Dist.Ct.App.1983) (per curiam) (proxy may specify or limit authority of proxy or may be general and unlimited).

4. Article XIV of Brooklyn's Articles of Incorporation provides that "[t]he directors ... shall not bind this corporation until they have received the approval of at least two thirds of all the shares outstanding."

On September 16, 1992, plaintiffs filed a second suit seeking a declaratory judgment determining that: (1) Brooklyn was not a legally organized corporation; (2) Brooklyn's corporate charter had expired after 25 years; (3) Brooklyn's corporate charter had expired before the amended articles of incorporation were filed which had the purpose of extending Brooklyn's corporate life; (4) Madsen and Winget were not authorized to enter into a Watershed Agreement which was executed by them on August 10, 1992; (5) the project is beyond Brooklyn's business objects and pursuits; and (6) Brooklyn Irrigation Company is not a corporation. The two lawsuits were consolidated by the trial court on November 13, 1992.

On December 10, 1992, defendants filed a motion for summary judgment seeking dismissal of plaintiffs' claims. On February 16, 1993, the trial court granted partial summary judgment in favor of defendants determining, among other things, that the records inspection issue was moot because defendants made the books available for plaintiffs' examination. The trial court granted summary judgment in favor of defendants on all other issues except the issue of whether Madsen and Winget had the authority to enter into the Watershed Agreement, which was preserved for further hearing. On March 12, 1993, defendants filed a motion for summary judgment on the remaining issue, which was granted November 19, 1993. Plaintiffs appeal.

## II. ISSUES

Plaintiffs raise the following issues on appeal: Whether the notice of the special meeting was legally sufficient; whether Madsen and Winget were authorized to enter into the Watershed Agreement; and whether the issue concerning plaintiffs' inspection of Brooklyn's records was rendered moot because defendants gave plaintiffs access to the records.

## III. STANDARD OF REVIEW

If no genuine issue of material fact exists, summary judgment is appropriate and the moving party is entitled to judgment as a matter of law. *K & T, Inc. v. Koroulis*, 888 P.2d 623, 626–27 (Utah 1994) (citations omitted); Utah R.Civ.P. 56(c). Whether the grant of summary judgment was appropriate is a question of law; therefore, we accord no deference to the trial court's legal conclusions. *Koroulis*, 888 P.2d at 627 (citing *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993)); *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989)). The trial court's decision is reviewed for correctness. *4447 Assocs. v. First Sec. Fin.*, 889 P.2d 467, 471 (Utah App.1995).

## IV. ANALYSIS

### A. Lack of Proper Notice

Plaintiffs argue that the notice given to the Brooklyn shareholders of the special meeting was inadequate. Plaintiffs base their claim on Utah Code Ann. § 16-6-61 (1991),[5] which provides:

A nonprofit corporation may authorize a sale, lease, exchange, mortgage, pledge, or other disposition of all, or substantially all, of its property and assets.... This authorization *shall* be obtained as follows:

(1) If there are members with voting rights, the governing board shall adopt a resolution recommending the sale, lease, exchange, mortgage, pledge, or other disposition and directing that the resolution be submitted to a vote at a meeting of members having voting rights, which may be either an annual or a special meeting. *Written or printed notice stating that the purpose, or one of the purposes, of the meeting is to consider the sale, lease, exchange, mortgage, pledge, or other disposition of all, or substantially all, of the property and assets of the corporation shall be given to each member entitled to vote....*

*Id.* (emphasis added).

The notice given the shareholders provided that "[t]he purpose of the meeting is to take a final vote on the proposed pressurized irrigation system and to authorize the debt for the system." Plaintiffs argue that because

---

5. Defendants agreed at oral argument that Utah Code Ann. § 16-6-61 (1991) is controlling.

the notice failed to specifically mention that all or substantially all of Brooklyn's property and assets were to be assigned in connection with the project, it did not comply with section 16–6–61 and, therefore, any action taken at the special meeting was void for lack of proper notice.

■ When determining whether substantial statutory compliance as opposed to strict statutory compliance should be permitted, we must be ascertain whether full protection under the statute would still be enjoyed by the party the statute seeks to protect. If "substantial ... compliance satisfies the policy of the statute[,]" then strict compliance is not in order. *Latipac, Inc. v. Superior Court of Marin County,* 64 Cal.2d 278, 49 Cal.Rptr. 676, 679, 411 P.2d 564, 567 (1966); *accord Asdourian v. Araj,* 38 Cal.3d 276, 211 Cal. Rptr. 703, 706–707, 696 P.2d 95, 99 (1985); *Dunkelberger v. Baker,* 12 Wash.App. 917, 533 P.2d 433, 436 (1975). Furthermore,

> [c]ourts, in evaluating the necessity for strict compliance ... focus upon the nature of the statutory requirements and the likelihood of prejudice. If failure to adhere to the requirements will affect a substantive right of one of the parties and possibly prejudice that party, then courts require strict compliance. On the other hand, if the requirements are merely procedural and will not prejudice one of the parties, substantial compliance is sufficient.

*Tech–Fluid Servs., Inc. v. Gavilan Operating Inc.,* 787 P.2d 1328, 1333 (Utah App.), *cert. denied,* 795 P.2d 1138 (Utah 1990).

■ The notice requirement in section 16–6–61 protects the rights of the shareholders of a nonprofit corporation and is therefore included for their benefit. *See U–Beva Mines v. Toledo Mining Co.,* 24 Utah 2d 351, 471 P.2d 867, 869 (1970) (stating that an almost identical statute relating to corporations "inures to the benefit of the shareholders"). A shareholder who has voting rights but is not put on notice that the purpose of a

meeting is to determine whether all or substantially all of the assets of the nonprofit corporation should be disposed of may decide that his or her presence at the meeting is not important. However, if all or substantially all of the nonprofit corporation's assets are sold, leased, exchanged, or otherwise encumbered, the shareholder's substantive rights may well be irrevocably prejudiced. Thus, strict compliance with section 16–6–61 is consistent with the purpose of the statute: protection of the shareholders' rights.[6]

Failure to comply with section 16–6–61 may render any action taken at a meeting held pursuant to this section null and void. *See Farr v. Brinkerhoff,* 829 P.2d 117, 122 (Utah App.1992) (holding that because requirements of statute almost identical to section 16–6–61 were not complied with, transfer of property was void); *Davis v. Heath Dev. Co.,* 558 P.2d 594, 596 (Utah 1976) (holding that because statutory requirements almost identical to section 16–6–61 were not complied with, company not bound to perform sale of company property); *State v. Johnson,* 114 Utah 333, 199 P.2d 556, 560 (1948) (holding that call of special meeting was not in accordance with statutory procedures, therefore action taken at meeting was void); *see also* 18a Am.Jur.2d *Corporations* § 975 (1985) ("When a statute prescribes that a meeting to consider specified business of an extraordinary character be convened only after notice of its purpose, failure to comply renders a resolution adopted, or other action taken at such meeting void or invalid.").

The facts of this case clearly demonstrate that the requirements of section 16–6–61 were not met. The notice to Brooklyn's shareholders merely states that one purpose of the special meeting was to "authorize the debt" for the proposed project; absent is an unequivocal statement that approval of the project will result in the assignment of all or substantially all of Brooklyn's assets. Thus, as to the shareholders who did not attend the

---

**6.** Moreover, the fact that section 16–6–61 provides that notice of the disposition of all or substantially all of the nonprofit corporation's assets *shall* be given to each voting member supports the conclusion that a nonprofit corporation should be required to strictly comply with

the notice requirement. "Utah courts construing statutes containing the term 'shall' generally have concluded that term is mandatory." *Jones v. Bountiful City Corp.,* 834 P.2d 556, 559 (Utah App.1992).

meeting, any action taken at the meeting is null and void.

■ However, when shareholders attend and participate in a meeting, either in person or by proxy, they cannot later claim that any action taken at the meeting was invalid because of improper notice. *Beggs v. Myton Canal & Irrigation Co.*, 54 Utah 120, 179 P. 984, 987 (1919).

> [T]hose whose stock was represented at the meeting are not in a position to object to the form of notice. . . . *"Strict statutory requirements as to notice of a meeting of stockholders of a corporation, being intended for their protection, may be waived by them, and, if waived, the meeting and all its proceedings are as valid as if full statutory notice had been given. . . .* As a general rule, if the persons entitled to notice of a corporate meeting actually attend it and participate in the business there transacted, it is immaterial whether the notice was given in the manner prescribed by statute."

*Id.* (citation omitted) (emphasis added).[7]

■ Although not addressed in *Beggs*, the ability to preserve a claim, notwithstanding action or inaction which may constitute a waiver, is integral to the very concept of waiver. Most commonly, claims are preserved by formally objecting to the challenged action or inaction or proceeding under protest. *See Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517, 520 (1961) (holding that before stockholder can complain of defects in statutory notice requirement, stockholder must object when appearing and participating at stockholders' meeting); *see generally, United Park City Mines Co. v. Greater Park City Co.*, 870 P.2d 880, 889 (Utah 1993) (stockholder signed agreement under protest to preserve right to seek legal redress); *Lamb v. B & B Amusements Corp.*, 869 P.2d 926, 931 (Utah 1993) (to preserve issue for appeal, party must object); *Blaine Hudson Printing v. Tax Comm'n*, 870 P.2d 291, 293 (Utah App.1994) (must object specially or will have submitted to court's jurisdiction); Utah Code Ann. § 59–1–301 (1992) (statute allows taxpayer to pay under protest, thereby preserving right to challenge tax). *But see Rowland v. Rowland*, 102 Idaho 534, 633 P.2d 599, 603–04 (1981) (holding that even though shareholder objected to insufficient notice, shareholder waived claim that notice was defective by participating in meeting). The principle behind the right to preserve claims is particularly applicable where the claim is noncompliance with mandatory language of a controlling statute. Thus, we hold that a challenge to the adequacy of the notice can be preserved by objecting prior to, or contemporaneously with, the shareholder's participation in the meeting.

■ Because it is undisputed that plaintiffs attended and participated in the special meeting either in person or by proxy, thereby waiving their claim of inadequate notice, defendants are entitled to judgment as a matter of law unless plaintiffs show that they objected to the inadequate notice prior to or at the special meeting. However, nothing in the record suggests that the necessary objec-

---

7. This rule of law has been followed in more recent cases in other jurisdictions. *See Andrews v. Precision Apparatus Inc.*, 217 F.Supp. 679, 685 (S.D.N.Y.1963) (attendance of and participation in meeting effectively amounts to a waiver of any defects in notice); *Stough v. 501 Ranch, Inc.*, 421 So.2d 1154, 1158 (La.App.1982) (holding that "shareholder who has participated in and voted at a meeting cannot complain of defects in the notice"); *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517, 520 (1961) (holding that defects in statutory notice requirement were waived by stockholder who appeared and participated without objection at stockholders' meeting); *Caldwell v. Kingsbery*, 451 S.W.2d 247, 251 (Tex.Ct.App. 1970) (holding that defects in statutory notice requirement was waived by stockholder who appeared and participated at stockholders' meeting); *Solomon v. Atlantis Dev., Inc.*, 147 Vt. 349, 516 A.2d 132, 135 (1986) (holding that even though notice failed to comply with statutory law which required notice of possible sale of corporate assets, "plaintiffs, by attending the meeting, participating in the discussion and voting on the proposed sale, waived their right to object"); *Scott County Tobacco Warehouses, Inc. v. Harris*, 214 Va. 508, 201 S.E.2d 780, 782 (1974) (holding that action taken at special meeting was not invalid based on improper notice because directors participated in and voted at meeting and therefore waived any defects in notice); *see also* 5 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 2011 (1987).

tion was made.[8] Accordingly, because plaintiffs have failed to make any showing that they did not waive their claim of inadequate notice, the trial court's grant of summary judgment against plaintiffs was appropriate.

## B. Lack of Access Claim

 Plaintiffs claim that the trial court's dismissal of their records inspection claim as moot was in error because issues remain as to whether they were denied access and what their damages are as a result of defendants' conduct. "[A] case is deemed moot when the requested judicial relief cannot affect the rights of the litigants." *Burkett v. Schwendiman*, 773 P.2d 42, 44 (Utah 1989). Even if we were to reverse the trial court on this issue, no other relief would be available because defendants have already given plaintiffs the requested relief.[9] Therefore, we agree that this issue is moot.

While plaintiffs claim that "the issue of damages suffered by the plaintiffs may not be overcome or 'mooted' by the defendants' belated attempts to remedy plaintiffs' damages[,]" they provide no legal authority or analysis to support this claim. Thus, we decline to address this issue. *See Financial Bancorp, Inc. v. Pingree & Dahle, Inc.*, 880 P.2d 14, 17 n. 3 (Utah App.1994).

## V. CONCLUSION

Because the requirements of Utah Code Ann. § 16-6-61(1) (1991) were not strictly complied with, the notice sent to Brooklyn's shareholders was deficient and, therefore, any action taken at the special meeting is void unless the deficiency is waived. In response to defendants' motion for summary judgment, plaintiffs presented no evidence that they objected to the adequacy of the notice at the special meeting. We hold that by attending and participating in the special meeting without objecting to the adequacy of the notice, plaintiffs waived their right to object. Thus, the trial court's summary judgment against plaintiffs is affirmed.

Additionally, because plaintiffs were given access to Brooklyn's records, which was their requested relief, and because plaintiffs have not provided this court with any legal basis for damages based on defendants' initial refusal to allow plaintiffs access to Brooklyn's stockbook, we affirm the trial court's dismissal of this claim as moot.

GARFF and WILKINS, JJ., concur.

---

8. Instead, the affidavits and documents filed by plaintiffs in response to defendants' motion for summary judgment reflect active participation by plaintiffs in the meeting and opposition arguments presented by plaintiffs on the merits of the proposal.

9. Plaintiffs requested an order permitting plaintiffs to inspect Brooklyn's books and papers.