Present: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and Russell, S.J.

ANDREW M. BRIZZOLARA, ET AL.

                                     OPINION BY

v.  Record No. 061496      JUSTICE LAWRENCE L. KOONTZ, JR.

                                     June 8, 2007

SHERWOOD MEMORIAL PARK, INC., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF SALEM
Kenneth E. Trabue, Judge Designate

In this appeal, we consider whether the trial court properly granted summary judgment to one of two groups vying for control of a not-for-profit, nonstock corporation that owns and operates a cemetery in the City of Salem. The focus of the dispute between the groups and the principal issue presented in this appeal concerns the authority of the directors of the corporation to retire certain debt of the corporation in the form of debentures unless the holders of the debentures, who were also members of the corporation, consented to payment of the debt by surrendering payment coupons attached to the debentures.[1]

---

[1] A debenture, sometimes called a debenture bond or a debenture note, is a form of security issued by a corporation and registered as to ownership on the books of the corporation, which, as in this case, usually constitutes a "[l]ong-term unsecured debt instrument, issued pursuant to an indenture." A debenture is "backed by the general credit and earning history of a corporation and usually not secured by a mortgage or lien

BACKGROUND

In 1964, the stockholders of Sherwood Burial Park, Inc., a closely held corporation that owned and operated a cemetery in the present City of Salem, determined to convert the business to a not-for-profit, nonstock corporation. The new corporation, Sherwood Memorial Park, Inc., executed articles of incorporation on November 27, 1964 for which the State Corporation Commission issued a corporate charter on December 21, 1964. The articles of incorporation were subsequently recorded in the clerk's office of the appropriate circuit court.[2]

In relevant part, Sherwood Memorial Park's articles of incorporation provide that management of the corporation is by a board of directors and name four initial directors. The articles further require that after the first year the composition of the board is determined "by a majority vote of the members of the corporation at the annual meeting thereof, to serve for the ensuing year." In the event of "vacancies in [the] board" between annual meetings, the articles provide that

on any specific property." Black's Law Dictionary 401 (6th ed. 1990).

[2] In 1964, Salem was administratively a town within Roanoke County. Accordingly, the articles of incorporation were recorded in the Clerk's Office of the Circuit Court of Roanoke

the vacancies "shall be filled from time to time by the majority vote of the directors then in office."  The articles make no express provision for the removal of directors by the membership or for the replacement of directors between annual meetings in the event that all the directors resign or otherwise vacate their office.  As further defined by the articles, the voting membership of the corporation consists of "those persons holding debentures issued by the corporation" and each debenture holder is entitled to one vote for each $500 of value in the debenture held.[3]

The corporate by-laws of Sherwood Memorial Park provide that annual meetings of the board and of the corporation are to be held on the second Tuesday in March of each year.  At the annual corporate meeting "directors shall be elected [by the membership] to fill vacancies for the ensuing year and until their respective successors are elected and qualify."  No notice is required for the annual meeting, and the directors are

---

County.  When Salem became an independent city in 1968, Sherwood Memorial Park's place of incorporation became Salem.

[3] The corporate by-laws adopted by Sherwood Memorial Park set the voting rights of debenture holders at one vote per $1000 of value of the debenture held.  This variance between the articles and the by-laws is not germane to the issues presented in this appeal.

empowered to "provide by resolution . . . for the holding of additional regular meetings of the Board without other notice than such resolution." The by-laws further provide that the president or a majority of the board of directors may call special meetings of the board by providing notice to the members of the board, however, the purpose of such meetings is not required to be stated in the notice unless "required by law or by these By-Laws." Removal of a director or officer may be accomplished by a majority vote of the board.[4] There are no provisions in the by-laws for members to have the power to call special meetings or to remove an officer or director.

In exchange for their shares of stock in Sherwood Burial Park, the stockholders received non-interest-bearing debentures with an aggregate face value of $1,000,000.[5] Sherwood Memorial

_____

[4] The by-laws provide that the majority vote consists of directors "other than the directors sought to be removed."

[5] After the debentures were issued, Sherwood Memorial Park applied to the Internal Revenue Service (IRS) for tax-exempt status. Because the IRS viewed the transfer of ownership of Sherwood Burial Park to Sherwood Memorial Park to be a taxable event for the former stockholders, the IRS refused to grant tax-exempt status to Sherwood Memorial Park until an agreement was reached determining the actual value of the stock surrendered and requiring the difference between the value of the stock and the face value of the debentures to be treated as interest by the debenture holders who joined in the agreement. While the parties attribute significance to this agreement with regard to the interpretation of the terms of the debentures, we find this

Park issued a total of thirty-six debentures in denominations varying from $6,000 to $50,000, depending on the value of the stock exchanged by each stockholder. Each debenture included two hundred attached coupons valued at one-half of one percent of the face value of the debenture. The terms of each debenture are identical and provide that "[a]ll such debentures and coupons are payable on or before fifty (50) years after [the] date" of issue, January 2, 1965. "The amount due under [this] debenture shall be reduced from time to time by the payment of [the attached] coupons to the extent thereof."

The terms of the debentures further provide that:

> For the purpose of paying such debentures, SHERWOOD MEMORIAL PARK, INC. agrees to set aside in a sinking fund an amount equal to not less than 15% of the retail selling price of each lot and space in its mausoleum sold by it hereafter.
>
> . . . .
>
> SHERWOOD MEMORIAL PARK, INC. agrees that the sinking fund provided for retirement of these debentures shall be applied from time to time as determined by the Board of Directors, but at least within sixty (60) days after $5,000.00 shall be accumulated therein. The amount applied to the payment or redemption of said debentures shall be applied pro-rata among the outstanding debentures according to the face value thereof. As payments are made on [the] debenture[s], corresponding coupons

agreement to be wholly collateral to the pertinent facts and issues raised in this appeal.

5

shall be detached, cancelled and delivered to SHERWOOD MEMORIAL PARK, INC.

The debentures further provide for a confession of judgment against the corporation by a debenture holder in the event a debenture is not paid in accordance with these terms.

Each coupon contains the following language:

SHERWOOD MEMORIAL PARK, INC. will pay the amount specified herein, as and when declared due by the Board of Directors of said Company out of the sinking fund accumulated for that purpose, according to the terms of the debenture to which this coupon is attached, upon the surrender thereof.

Sherwood Memorial Park made payments on the debentures in accordance with their terms until June 1, 1994, at which time the aggregate value of the outstanding debentures was $25,000. After June 1, 1994, no further payments were made on the debentures.  Although it is undisputed that the sinking fund continued to accumulate funds from the sale of lots and mausoleum space and that by the time of the events that precipitated this litigation the fund was adequate to retire the remaining debentures, for more than ten years no debenture holder made a demand for payment and no effort was made by the board or the debenture holders to enforce the terms of the debentures requiring payments to be made when the balance of sinking fund reached $5,000.

6

In September 2005, Randolph C. Gleason was president of Sherwood Memorial Park and chairman of its board of directors. Andrew M. Brizzolara, John A. Cross, Jr., David D. Walker, and Thomas D. Weaver were also directors of the corporation. In addition to the five directors, who were all debenture holders, there were seven other persons who held debentures from Sherwood Memorial Park.[6]

Although it is self-evident that a dispute arose among certain debenture holders and certain directors, the specifics of it are not recounted in the record. Whatever the nature of that dispute, the matter came to a head beginning on September 17, 2005 when three debenture holders, J. Robert Goodwin, III, F. Staley Hester, Jr., and Jean G. Taylor signed and delivered to Gleason a letter in which, "[p]ursuant to Code of Virginia Section 13.1-839," they demanded that Gleason "call a special meeting of the members (bondholders) of Sherwood Memorial Park." The letter further stated that the purpose of the special meeting was "[t]o consider the removal of all members of the board of directors except Randolph C. Gleason," and "[t]o recommend to the board of directors the following persons to fill the unexpired terms of removed directors: Andrew M.

---

[6] Another debenture was held by an estate.

Brizzolara, Thomas D[.] Weaver, Jean G. Taylor, and Gail J. Zimmerman."

On September 19, 2005, Gleason, acting in his capacity as president of the corporation, sent a notice to the debenture holders of a special meeting of the corporation to be held October 6, 2005 at 1 P.M.[7]  The notice stated as the purpose of the meeting the two actions detailed in the September 17, 2005 letter to Gleason from the three debenture holders.

On September 20, 2005, Gleason, by a handwritten note, advised the other directors that a special meeting of the board would be held on September 23, 2005.  On that same day, Brizzolara, Cross, and Walker provided the directors with a draft of amended by-laws.

_____

[7] Code § 13.1-839(A) provides that "[i]n the absence of a provision in the articles of incorporation or bylaws stating who may call a special meeting of members, a special meeting of members may be called by members having one-twentieth of the votes entitled to be cast at such meeting."  Because the by-laws of Sherwood Memorial Park have provisions for the calling of special meetings by the president or a majority of the directors, Gleason was not obligated to honor the demand made by Goodwin, Hester, and Taylor.  However, because Gleason was empowered as president of the corporation to call a special meeting, the notice of the meeting sent by him to the debenture holders was authorized in this respect, even though it was purportedly being issued under the authority of the statute.  In fact, the three debenture holders did not assert that they were calling the meeting but, rather, demanded that Gleason do so.

8

At the meeting of the board of directors held on September 23, 2005, a majority of the directors, with Gleason in opposition, voted to approve the new by-laws.  One amendment to the by-laws provided that if the outstanding debentures were fully paid, thus eliminating the only membership class of the corporation, the directors in office at the time would become the members in a new class.[8]  At this meeting, a majority of the directors, again with only Gleason opposed, then voted "to pay off all outstanding bond holders" as of the date of the meeting.  The directors also discussed "Gleason's recent action attempting to usurp the authority of the Board."  The four other directors voted to suspend Gleason, with pay, from his duties as president of Sherwood Memorial Park.  Finally, a further special meeting of the board was called for September 28, 2005 "for the purpose of discussing and voting on the removal of Randy Gleason as a

---

This resolves one of the issues raised in appellants' third assignment of error.

[8]It is now conceded by the appellants that this amendment to the by-laws was improper, as class membership in a nonstock corporation can only be defined in the articles of incorporation unless a provision therein permits membership to be defined in the by-laws.  Code § 13.1-837.  Sherwood Memorial Park's articles of incorporation contain no such provision.  We note, however, that the Virginia Nonstock Corporation Act provides that "[i]f a corporation has no members or its members have no right to vote, the directors shall have the sole voting power." Code § 13.1-846(D).

Director of Sherwood Memorial Park, Inc., and to discuss and vote on amending the by[-]laws of Sherwood Memorial Park, Inc. to decrease the number of Directors from five to four."

Immediately following the September 23, 2005 meeting of the board of directors, Cross, who had been named acting president, sent cashier's checks funded by money from the corporation's sinking fund to each of the remaining debenture holders along with a notice that the checks were "payment in full for the Sherwood bondholders debentures." Although all these checks were received, Gleason, Taylor, Goodwin, and Hester, among others, refused to accept the checks. Through an attorney, Taylor and Hester expressly advised the board that "[t]hey absolutely do not want their bonds redeemed." None of the debenture holders surrendered the remaining coupons on their debentures.

Gleason did not attend the September 28, 2005 meeting of the board of directors. The four remaining directors voted to remove Gleason as a director. They also voted to amend the by-laws so as to reduce the number of directors from five to four.

On October 6, 2005, Gleason and the other dissenting debenture holders conducted a meeting at which they voted to remove Brizzolara, Cross, Walker, and Weaver as directors. A vote was also taken "to recommend that Gleason, as the only

10

remaining director, elect Taylor and Zimmerman [as directors], or in the alternative – should Gleason's removal [on September 28, 2005] have been valid – to elect all three to the board."

On October 18, 2005, after some ineffective negotiation between the two groups contesting control of the corporation, Brizzolara, Cross, Walker, and Weaver (hereinafter, "the Brizzolara group") filed a bill of complaint for declaratory and injunctive relief in the Circuit Court of the City of Salem against Gleason, Taylor, and Zimmerman (hereinafter, "the Gleason group") seeking a judgment confirming the actions taken by the Brizzolara group at the September 23, 2005 and September 28, 2005 meetings and nullifying the action of the dissenting debenture holders at the October 6, 2005 meeting.[9]  Thereafter, the Gleason group filed an answer and cross-bill seeking a judgment confirming the actions taken at the October 6, 2005 meeting.

The Brizzolara group filed an answer to the cross-bill in which, among other responses, it expressly denied the allegation

_____

[9] The corporation was also named as a defendant in the original bill of complaint and all pleadings were subsequently served on counsel for the corporation.  However, the corporation did not respond to the bill of complaint and took no significant role in the subsequent proceedings.

11

that a quorum had been present at the October 6, 2005 meeting. Ultimately, the parties filed cross-motions for summary judgment with supporting briefs and exhibits.

The principal point of contention between the parties was whether the Brizzolara group, acting in its capacity as a majority of the board of directors, had the authority to direct the retirement of the corporation's debt evidenced by the debentures by issuing payments in full to the debenture holders. The Brizzolara group contended that the board had such authority and, as a result, the tender of payment of the entire balance due on the debentures terminated the debenture holders' membership in the corporation effective September 23, 2005. The Brizzolara group maintained that under this circumstance the debenture holders could not refuse the tender of payment and were required to surrender the attached coupons to the corporation, even if the debenture holders declined to negotiate the payment checks. Thus, the Brizzolara group asserted that on October 6, 2005, there were no "members" within the class of debenture holders to conduct the special meeting of the corporation.

In a footnote in the Brizzolara group's memorandum in support of its motion for summary judgment, the group stated that:

12

In addition to the reasons discussed below, Plaintiffs have previously argued that the actions taken at the October 6, 2005 meeting were void because there was not a quorum present and because those who voted were not original debenture holders. Because these issues may involve disputed questions of fact, they are not included in this motion for summary judgment. All arguments previously made by Plaintiffs are preserved.

The Gleason group responded to the Brizzolara group's motion for summary judgment by asserting that the board of directors could not unilaterally retire the debt of the corporation because the debenture holders were also members of the corporation, not merely creditors, by virtue of their ownership of the debentures. Thus, the Gleason group contended that the action by the board of directors on September 23, 2005 constituted at best an offer to redeem the remaining coupons on the debentures, which the holders were free to accept or reject. The Gleason group further contended that even if the board could retire the debt, the record date of the notice of the October 6, 2005 meeting was September 18, 2005 and the debenture holders as of the record date were entitled to vote as members of the corporation at the October 6, 2005 meeting. The Gleason group did not directly respond to the assertion of the Brizzolara group that there were disputed issues of material fact as to whether only original holders of the debentures were entitled to

vote and whether there was a quorum present at the October 6, 2005 meeting.

Following oral argument by the parties, the trial court issued an opinion and final order dated May 8, 2006. In that opinion and order, the trial court first addressed the issue of whether the Brizzolara group, acting in its capacity as a majority of the board of directors on September 23, 2005, had the authority to retire the entire debt of the corporation represented by the debentures. The trial court first concluded that "the agreement made between the shareholders of Sherwood Burial [Park, Inc.] and the incorporators of Sherwood [Memorial Park, Inc.] in exchanging their shares . . . for the $1 million in debentures is fully integrated in the articles of incorporation, debenture certificates, and the attached coupons." Accordingly, the trial court determined that "there can be no terms outside of those contained in these documents." Finding that no language in these documents expressly authorized "prepayment" of the debt, and considering the language providing for payment "upon the surrender" of a coupon and "most importantly" that debenture holders were granted voting rights in the corporation, the trial court concluded that the board of directors on September 23, 2005 "did not have the authority to

14

retire all the debentures in one fell swoop" because the debenture holders had not tendered their coupons for payment.

Having concluded that the action at the September 23, 2005 meeting of the board of directors to retire the debt of the corporation by payment in full of the outstanding debentures was invalid, the trial court then concluded that the actions of the Gleason group and other members at the October 6, 2005 meeting was valid presumptively because those attending the meeting had retained their debentures and, thus, remained members of the corporation.  Citing Scott County Tobacco Warehouses, Inc. v. Harris, 214 Va. 508, 513-14, 201 S.E.2d 780, 784 (1974), the trial court reasoned that the membership of the corporation could remove all directors and replace them with new directors at the same meeting.  The trial court further observed in a footnote that even if it had found that the retirement of the debt had been proper, it would have nonetheless agreed with the Gleason group that under Code § 13.1-842(D) the record date of the October 6, 2005 meeting was September 18, 2005 and, thus, the debenture holders of record on that date would have been entitled to vote at the October 6, 2005 meeting.

The trial court did not directly address the assertion by the Brizzolara group that there was a material dispute as to whether only original debenture holders were entitled to

15

membership and, if so, whether there was a quorum at the October 6, 2005 meeting. However, the trial court implicitly rejected this argument by finding that all those attending the October 6, 2005 meeting were members and that they constituted "68.8%" of the debenture holders.

Accordingly, the trial court denied the Brizzolara group's motion for summary judgment on its bill of complaint and granted the Gleason group's motion for summary judgment on its cross-bill. The trial court ordered that debenture holders who had negotiated the payment checks tendered by the corporation on September 23, 2005 could regain their membership in the corporation by repaying the amount tendered, otherwise they would be required to surrender the remaining coupons on their debentures. Similarly, the trial court ordered that those debenture holders who had not negotiated the payment checks could retain their membership in the corporation by endorsing the checks for redeposit into the sinking fund or could surrender their debenture coupons and terminate their membership in the corporation. The trial court further ruled that the Gleason group was the legally elected board of directors of Sherwood Memorial Park and directed that the Brizzolara group surrender the records of the corporation to the board and take no further action interfering with the corporation's operation,

16

"except to the extent of their membership interests as debenture[]holders."

We awarded the Brizzolara group an appeal from the judgment of the trial court with respect to the following assignments of error:

1. The trial court erred in holding that the Debentures were not paid in full on September 23, 2005, and thus erred in denying the Brizzolara Group's Motion for Summary Judgment.

2. The trial court erred in holding that the actions taken at the October 6, 2005 "Special Meeting of Members" were valid and did not violate Virginia law, and thus erred in denying the Brizzolara Group's Motion for Summary Judgment.

3. The trial court erred in upholding the removal of the Brizzolara Group and in granting summary judgment to the Gleason Group because it never decided:

   a. Whether the persons who called the "Special Meeting of Members" were members of Sherwood entitled to call the meeting;

   b. Whether there was a quorum at the meeting; and

   c. Whether the persons who voted at the meeting were members of Sherwood and were entitled to vote.

DISCUSSION

This appeal addresses the legality of actions taken in corporate governance, not the wisdom or propriety of those actions. Thus, while in the trial court and in the briefs filed in this Court the parties intimate that improper motives were at the root of their opponents' actions, we will confine our review to whether the trial court was correct in awarding summary

17

judgment to the Gleason group based principally on the finding that the Brizzolara group lacked the authority to unilaterally extinguish the debt of the corporation represented by the debentures.

The parties do not contest that the trial court based its ruling on this point solely on its interpretation of the terms of the corporate records of Sherwood Memorial Park, including its articles of incorporation, by-laws, and the debentures and their attached coupons as contracts between the corporation and the debenture holders.  Where the judgment of the trial court is based upon its interpretation of written documents, we review the issue de novo because " '[w]e have an equal opportunity to consider the words of the contract within the four corners of the instrument itself.' "  PMA Capital Ins. Co. v. US Airways, Inc., 271 Va. 352, 358, 626 S.E.2d 369, 274 (2006) (quoting Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002)); accord Wilson v. Holyfield, 227 Va. 184, 188, 313 S.E.2d 396, 398 (1984).  "Where contracts are 'plain upon their face, they are to be construed as written, and the language used is to be taken in its ordinary significance unless it appears from the context it was not so intended.  They are to be construed as a whole.' "  Dowling v. Rowan, 270 Va.

18

510, 516, 621 S.E.2d 397, 399 (2005) (quoting Virginian Ry. Co. v. Hood, 152 Va. 254, 258, 146 S.E. 284, 285 (1929)).

The parties also do not contest that the debenture certificates, including the attached coupons, constitute contracts between Sherwood Memorial Park and the individual debenture holders. Here, the debentures and their attached coupons are wholly integrated contracts, plain upon their face, which can be interpreted by application of the ordinary significance of the language used therein. Moreover, nothing in the language of the debentures is contradicted or inconsistent with language of the other corporate records.[10]

It is clear that the original parties to the debentures contemplated that Sherwood Memorial Park's obligation to pay the debt could be completed before expiration of the fifty-year term of the debentures. The debentures are "payable on or before fifty (50) years after the date" of issue, which was January 2,

---

[10] We recognize that separate agreements that are executed as part of the same transaction may be construed as a single contract depending "on the facts of each case." Parr v. Alderwoods Group, Inc., 268 Va. 461, 468, 604 S.E.2d 431, 435 (2004). The debentures reflect the membership of the corporation and the voting rights of the debenture holders as established in the corporate articles and by-laws. For this reason, the focus of our analysis is upon the language of the debentures and the attached coupons.

19

1965.  (Emphasis added.)  Similarly, the debentures provide that "[t]he amount due . . . shall be reduced from time to time by the payment of [the] coupons."  Moreover, the creation of the sinking fund and the requirement that pro-rata payments be made from that fund whenever its balance reached $5,000, the aggregate amount of one coupon from each of the 36 debentures, supports the conclusion that payment of the debentures before the expiration of the fifty-year term not only could, but almost certainly would, occur.

The express language of the debentures requires that payments from the sinking fund "shall be applied from time to time <u>as determined by the Board of Directors</u>."  (Emphasis added.)  The language of the coupons is equally clear that payment of a coupon occurs "<u>as and when declared due by the Board of Directors</u>."  (Emphasis added.)  Although reference is made to payment "upon the surrender" of the coupon, nothing in the language of the debentures or the coupons suggests that payment is conditioned upon surrender of one or more coupons.  To the contrary, the debentures expressly provide that "[a]s payments are made on [the] debenture[s], corresponding coupons <u>shall be detached, cancelled and delivered to Sherwood Memorial Park, Inc.</u>"  (Emphasis added.)

While the debentures provided the holders with the legal recourse to force payment in the event the corporation failed to abide by the sinking fund provision or the fifty-year term, the debentures do not expressly or by implication grant the holders a corresponding power to decline to abide by those provisions. It is true that after June 1, 1994, none of the debenture holders exercised the right to force payments from the sinking fund, as they could have done. Nonetheless, their acquiescence in the failure of the corporation to abide by the terms of the debentures cannot give rise to a power in the holders to refuse tender when the corporation ultimately resumed payment in accord with those express terms.

In short, the debentures simply do not provide for any discretion on the part of the holders to refuse payment either before January 2, 2015 or thereafter. Nor is it relevant that ownership of a debenture entitled the owner to membership rights in the corporation. The consequential fact that final redemption of the debentures would extinguish those rights cannot give rise to a right to refuse to abide by the clear and unequivocal language of the debentures that the board of directors would determine when payment of the debt was to be made from, and in accord with, the established sinking fund.

For these reasons, we hold that the decision of a majority of the board of directors, the Brizzolara group, on September 23, 2005, to pay the entire balance of the debt represented by the remaining debenture coupons out of the surplus in the sinking fund was valid under the express terms of the debentures. The trial court's judgment that this action of the board of directors was not authorized, and its consequential ruling that the debenture holders could retain or reacquire their coupons, and thereby remain members of the corporation, was erroneous. Accordingly, we will reverse that portion of the trial court's judgment.

We now turn to the Brizzolara group's second assignment of error. It contends that if the September 23, 2005 determination of the board of directors to tender payment of the debentures in full was valid, the membership rights of the debenture holders were terminated as of that date. Thus, it maintains that the actions taken at the "special meeting of members" on October 6, 2005 to remove the group as directors and to elect new directors were not valid because those in attendance were no longer "members" of the corporation.

The Gleason group responds that regardless whether the September 23, 2005 action by the board of directors was valid, the October 6, 2005 meeting was proper because, as the trial

court noted in an alternative ruling, the voting rights of those attending were determined by the date of the notice of the meeting under Code § 13.1-842(D).  Thus, even if the debentures were properly paid in full, the members of the corporation as of the "record date" of the meeting still possessed, what are sometimes called "dangling," voting rights.  We agree with the Gleason group.

In relevant part, Code § 13.1-842 provides:[11]

A. 1. A corporation shall give members written notice of the date, time and place of each annual and special members' meeting.  Such notice shall be given, either personally or by mail, no less than ten nor more than sixty days before the date of the meeting.

. . . .

4. Unless this chapter or the articles of incorporation require otherwise, the corporation is required to give notice only to each member entitled to vote at such meeting.

. . . .

D. If not otherwise fixed under § 13.1-840 or § 13.1-844, the record date for determining members entitled to notice of and to vote at an annual or special

---

[11] Effective July 1, 2007, the Virginia Nonstock Corporation Act, Code § 13.1-801 et seq., has been extensively revised. 2007 Acts ch. 925.  In this opinion, we will apply the law as applicable at the time of the corporate actions challenged in this appeal, and we express no opinion as to what effect, if any, the subsequent amendments to the Act would have on the issues raised herein.

23

meeting is the close of business on the day before the effective date of the notice to the members.

Code § 13.1-840, which concerns notice of a court ordered corporate meeting, and Code § 13.1-844, which permits a corporation to fix the record date through its by-laws or resolution of the board of directors, do not apply to the facts of this case. Similarly, nothing in the articles of incorporation of Sherwood Memorial Park provide for any permitted variance, as allowed under Code § 13.1-842(A)(4), from the provisions of Code § 13.1-842(D), which fix the record date of any special meeting of a nonstock corporation. Thus, the trial court correctly ruled that, as the effective date of the notice to the members of the October 6, 2005 meeting was September 19, 2005, the record date of the meeting was September 18, 2005, "the day before the effective date of the notice."

The Brizzolara group contends, however, that under the facts of this case Code § 13.1-842 controls only who was to receive notice of a meeting and not whether any person so entitled would be also eligible to vote at the meeting. During oral argument of this appeal, counsel for the Brizzolara group properly conceded that, under the provisions of Code § 13.1-658(D) as applied to a stock corporation, an owner of stock on the record date of a notice of a corporate meeting would be entitled to vote his or her shares at that meeting, even if the

24

owner had sold the shares in the interim between the record date and the meeting date.  Cf. Edward R. Aranow & Herbert A. Einhorn, Proxy Contests for Corporate Control 385 (2d ed. 1968) (explaining that under statutes establishing a record date, "the right to vote is no longer an incident of stock ownership, but an incident of finding the stockholder's name on the list of holders as of the record date").  The Brizzolara group maintains, however, that voting rights in the case of a nonstock corporation are contingent upon a member retaining membership status at the time of the meeting.

In this instance, the Brizzolara group relies upon language in Sherwood Memorial Park's articles of incorporation providing for a member to exercise voting rights "for each $500.00 debenture held by him at [the] meeting."  (Emphasis added.)  The Brizzolara group contends that because all of the debentures had been redeemed prior to the October 6, 2005 meeting there were no remaining members who "held [debentures] at [the] meeting" and, thus, the former debenture holders attending the meeting had no voting rights to exercise.  We disagree.

We are of opinion that, for all intents and purposes, Code § 13.1-658(D) and Code § 13.1-842(D) are identical in meaning and effect.  The obvious purpose of the notice requirements in both statutes is to establish a record date to fix those

25

entitled to vote in order to facilitate the orderly conduct of voting at annual or special meetings of a corporation. With regard to stockholders of a stock corporation, the corporate records on the record date resolve the right to vote. With regard to members of a nonstock corporation, Code § 13.1-842(D) has the same effect. Otherwise, this statutory provision would be rendered meaningless because there would be no reason for the statute to mandate notice to a member of a nonstock corporation if that member did not otherwise have voting rights pursuant to the corporation's articles of incorporation. Because nothing in the Code suggests that stock corporations and nonstock corporations are to be treated differently with respect to the rights of those entitled to vote at an annual or special meeting, we are not persuaded by the Brizzolara group's contention that a member of a nonstock corporation on the record date of a meeting must continue to maintain that membership after the record date in order to exercise his or her voting rights. Under the statutes, the record date of a corporate meeting fixes both the right of notice and the right to vote, and no intervening act occurring after the record date can alter or diminish those rights.

Accordingly, we hold that in terms of corporate governance in Virginia for both stock corporations and nonstock

corporations, it is the record date of a meeting that determines the right of a stockholder or member to vote. Therefore, the trial court did not err, based on its alternative ruling that Code § 13.1-842(D) established the voting rights of the debenture holders as of the record date of the meeting, in finding that debenture holders on September 18, 2005 were entitled to vote as members of Sherwood Memorial Park at the October 6, 2005 meeting.

The Brizzolara group next contends within its second assignment of error that even if the record date of the meeting established voting rights, the trial court nonetheless erred in finding that it was proper for the members to elect a new board of directors when the notice only stated that the purpose of the meeting was to "recommend" the election of directors to the board. Again, we disagree.

On the date the notice of the meeting was sent by Gleason, he was still chairman of the board of directors and had not yet been suspended from his duties as president of the corporation.[12]

_____

[12] See Code § 13.1-839(A) (permitting a corporation to hold a special meeting of members on call of the chairman of the board of directors or the president of the corporation); see also Code § 13.1-860(A) (permitting members to remove one or more directors with or without cause in the absence of limitations in articles of incorporation or by-laws).

27

The stated purpose of the meeting in the notice was "[t]o consider a proposal to remove all members of the board of directors except Randolph C. Gleason and to recommend to the board the election of . . . persons to fill the unexpired terms of [the] removed directors." It would require the application of form over substance to reach the conclusion that the notice of the meeting did not adequately reflect that the purpose of the meeting was to remove certain directors rather than merely to recommend that action. The removal of those directors was expressly stated as the purpose of the meeting. The recommendation for the election of other directors to fill the vacancies thus created was entirely consistent with the provision of the corporation's by-laws permitting vacancies on the board of directors to be filled by the majority vote of the directors then in office rather than by the members. It is self-evident that at the time the notice was sent, if the proposal to remove all the directors other than Gleason was passed, then Gleason alone would comprise "the board" to whom the recommendation was to be made.

The Brizzolara group responded to the notice of this meeting by preemptively removing Gleason as a director, effectively creating the circumstance under which a vote by the members to remove the remaining directors at the October 6, 2005

28

meeting would create a complete vacancy in the board.  See Code § 13.1-855(A)(requiring a board of directors to consist of "one or more individuals").  While that action did not alter the adequacy of the notice of the meeting with regard to the purpose of the meeting, it did remove the ability of the members to rely upon a recommendation to Gleason regarding the election of directors at the meeting.  Under that circumstance, the trial court correctly ruled that Scott County Tobacco Warehouses provided the authority for the members to elect a new board upon removal of the four remaining directors.[13]

We now turn to the Brizzolara group's final assignment of error in which the group contends that even if the trial court correctly ruled that the redemption of the debentures as of September 23, 2005 did not terminate the voting rights of the debenture holders, the trial court nonetheless erred in granting summary judgment for the Gleason group on its cross-bill because

---

[13] The Brizzolara group's contention that Scott County Tobacco Warehouses does not apply because the corporation in that case was a stock corporation is premised on a distinction without a difference.  The circumstances in Scott County Tobacco Warehouses and in this case are the same; that is, when those entitled to vote on matters at a meeting of any corporation act to remove all the directors of the corporation, they are permitted to avoid the consequential vacancy of the board by electing new directors at the same meeting.

there remained material issues of fact which the Brizzolara group disputed and upon which the trial court lacked competent evidence in the record to rule in favor of the Gleason group. Specifically, the Brizzolara group contends that the trial court failed to rule on whether Sherwood Memorial Park's articles of incorporation, when read in concert with Code § 13.1-837, limited membership in the corporation to "original" debenture holders, and if so whether the original debenture holders present, in person or by proxy, at the October 6, 2005 meeting constituted a quorum.[14]

The issue raised by the Brizzolara group's assertions concerning these disputed "facts" actually raises a mixed question of law and fact. The factual issues contested by the Brizzolara group would be material only if its interpretation of Code § 13.1-837 were correct. That statute provides, in relevant part, that:

---

[14] The Brizzolara group has not assigned error to the trial court's finding that, in person or by proxy, those present at the meeting held 68.8% of the debentures as of the record date of the meeting. The corporation's articles provide that "[m]embers holding 60 percent of the total votes that may be cast at any meeting will constitute a quorum at a meeting." Accordingly, we will accept that finding, and confine our consideration of the quorum issue to the argument that only original debenture holders were eligible to vote, thus altering the determination of a quorum.

A [nonstock] corporation may have one or more classes of members or may have no members. If the corporation has one or more classes of members, the designation of such class or classes and the qualifications and rights of the members of each class shall be set forth in the articles of incorporation . . . . Memberships shall not be transferable. Members shall not have voting or other rights except as provided in the articles of incorporation.

The Brizzolara group contends that because the articles of incorporation of Sherwood Memorial Park provide that the "members of the corporation shall be those persons holding debentures issued by the corporation" and that as Code § 13.1-837 prohibits transfer of membership in a nonstock corporation, only original holders of the debentures are members of the corporation. Thus, the Brizzolara group maintains that a person who subsequently acquired a debenture by purchase, gift, or inheritance would not be a member of the corporation, and any such debenture holder at the October 6, 2005 meeting could not be part of the quorum. We disagree with the Brizzolara group's interpretation of the scope of Code § 13.1-837.

Code § 13.1-837 provides that the rights of the members of a nonstock corporation, such as Sherwood Memorial Park, shall be set forth in the articles of incorporation. The statute further provides that the corporation may issue certificates evidencing membership and that membership shall not be transferable. The statute, however, does not address the circumstances of this

31

case where the express language of the corporation's articles of incorporation and the language of the debentures make clear that voting rights attached to the debentures and are to be rights exercisable by the debenture holders. Membership and voting rights are inextricable terms of the debentures issued in this case and, undoubtedly, at the time the corporation was incorporated it was anticipated that the original debenture holders would have the right to transfer those debentures by sale, gift, or bequest over the 50-year possible duration of the corporate debt evidenced by the debentures. While Code § 13.1-837 would prevent a debenture holder from transferring membership in Sherwood Memorial Park while retaining the debenture and retaining the right to receive payments on the attached coupons, the statute does not operate so as to restrict the membership of Sherwood Memorial Park to the original debenture holders. In other words, Code § 13.1-837 is not implicated where membership is a right attached to transferable property.

A fact is material to a party's position only if it can affect the outcome of the case. Because the facts the Brizzolara group contends are in dispute are premised on an incorrect legal analysis, those facts cannot be material to the outcome of this case. Accordingly, we hold that the trial court

32

did not err in determining that the Gleason group's motion for summary judgment was ripe for consideration because no material facts remained in dispute.

CONCLUSION

For these reasons, we will reverse the judgment of the trial court with respect to its determination that the then board of directors lacked the authority to retire the entire corporate debt evidenced by the debentures at the September 23, 2005 meeting. We will affirm the remainder of the trial court's judgment, including the determination that Gleason, Taylor, and Zimmerman are the properly elected directors of Sherwood Memorial Park.[15] We will remand the case to the trial court with direction to enter an order requiring the debenture holders who have not already done so to surrender the remaining coupons on their debentures upon return to them of the payments previously made on September 23, 2005, if necessary.

<u>Affirmed in part, reversed in part, and remanded</u>.

---

[15] Because the by-laws of the corporation presently require there to be a minimum of four directors, the board must either appoint a fourth director or amend the by-laws to reduce the number of directors to a minimum of three. We reject the assertion of the Brizzolara group that because fewer than four directors were elected at the October 6, 2005 meeting, this somehow invalidates the election.

33